UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

EDUARDO DIAZ GARCIA,

      Plaintiff,

v.

WARDEN, GLADES COUNTY
DETENTION CENTER,  U.S.
ATTORNEY GENERAL,

      Defendants.

Case No. 2:26-cv-771-KCD-NPM

_____/

## <u>ORDER</u>

Petitioner Eduardo Diaz Garcia has filed a habeas corpus petition challenging his detention by U.S. Immigration & Customs Enforcement. (Doc. 1.)[1] He claims that the Attorney General is holding him without a bond hearing in violation of the Immigration and Nationality Act ("INA"), and his continued imprisonment subverts the Fifth Amendment. Respondents oppose the petition (Doc. 9), and Garcia replied (Doc. 13). For the reasons below, the petition is **DENIED**.

### I. Background

Garcia is a Cuban citizen who arrived at the U.S. border in 2023 and was released on parole. (Docs. 9-1 9-2.) He filed an adjustment of status

---

[1] Unless otherwise indicated, all internal quotation marks, citations, case history, and alterations have been omitted in this and later citations.

application on March 5, 2024, which remains pending with USCIS. By its terms, Garcia's parole expired on January 26, 2025 (*see* Doc. 9-1), and it has not been renewed (Doc. 13 at 6).

He was recently arrested by ICE and has been in immigration custody since December 7, 2025. (Doc. 9-3.) ICE served Garcia with a Notice to Appear, identifying him as "an arriving alien," and placed him in removal proceedings. (Doc. 9-4 at 1.) Garcia has twice sought bond and has been denied both times, based on his status as "an arriving alien." (Docs. 9-5, 9-6.)

On March 12, 2026, the Immigration Court ordered Garcia removed and he appealed. (Docs. 9-7, 9-8.) Accordingly, his order of removal is not final.

## II. Legal Framework

The federal habeas statute, 28 U.S.C. § 2241, provides authority to issue writs of habeas corpus when an individual is "[i]n custody in violation of the Constitution or law or treaties of the United States." *Id*. § 2241(c)(3). "At its historical core, the writ of habeas corpus has served as a means of reviewing the legality of Executive detention, and it is in that context that its protections have been strongest." *I.N.S. v. St. Cyr*, 533 U.S. 289, 301 (2001). "Section 2241 authorizes federal courts to hear challenges to immigration detention." *Grigorian v. Bondi*, No. 25-CV-22914-RAR, 2025 WL 2604573, at *2 (S.D. Fla. Sept. 9, 2025).

### III. Discussion

Garcia's habeas petition seemingly raises three substantive claims. They are addressed in turn below.

**A. INA**

Sections 1225 and 1226 of the INA govern the detention of noncitizens before a final order of removal. The former provision covers "inadmissible arriving aliens" who are "present in the United States [but have] not been admitted." 8 U.S.C. § 1225(a)(1). So-called "'applicants for admission' in the language of the statute." *Jennings v. Rodriguez,* 583 U.S. 281, 297 (2018). Pertinent here, § 1225 "mandate[s] detention of applicants for admission until certain proceedings have concluded." *Id.* The only exception is release "on parole for urgent humanitarian reasons or significant public benefit." *Id.* at 288. So aliens falling under § 1225 are categorically not entitled to a bond hearing.

On the other hand, § 1226 has historically "authorize[d] the Government to detain certain aliens *already in the country* pending the outcome of removal proceedings[.]" *Jennings,* 583 U.S. at 289 (emphasis added). Section 1226(a) sets out a discretionary detention framework for aliens arrested and detained "[o]n a warrant issued by the Attorney General." 8 U.S.C. § 1226(a). While the arresting immigration officer makes an initial custody determination, noncitizens detained under § 1226(a) may appeal that

decision in a bond hearing before an immigration judge. *See* 8 C.F.R. §§ 1236.1(c)(8), (d)(1). "Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at the outset of detention." *Jennings*, 583 U.S. at 306.

According to Garcia, he is entitled to a bond hearing, and § 1226 is the vehicle through which he would obtain such relief. (Doc. 1 at 8.) But this argument runs headlong into the facts. Garcia was apprehended at the border while seeking admission. That puts him squarely under § 1225. *See, e.g.*, *Lopez v. Hardin*, No. 2:25-CV-830-KCD-NPM, 2025 WL 3022245, at *4 (M.D. Fla. Oct. 29, 2025) ("[Section] 1225 applies to noncitizens arriving at a border or port and are presently seeking admission into the United States.").

An alien "who arrives in the United States (whether or not at a designated port of entry[)] shall be deemed . . . an applicant for admission." 8 U.S.C. § 1225(a)(1). Garcia concededly meets this definition. He was stopped at the border, had no legal status, and sought entry. *See Jennings*, 583 U.S. at 287 ("[A]n alien who arrives in the United States . . . but has not been admitted, is treated as an applicant for admission.").

Applicants for admission who are inadmissible must be detained pending removal proceedings. *Jennings*, 583 U.S. at 297. The Government has only one alternative under this framework—it can temporarily release the noncitizen on humanitarian parole. *Id.* at 288. But make no mistake, this

4

is not a lawful entry. A paroled noncitizen has not been admitted to the country. Instead, the law treats them as if they never crossed the threshold. When the parole ends, they return to custody and are treated "in the same manner as that of any other applicant for admission." *Id.* (quoting 8 U.S.C. § 1182(d)(5)(A)). So, while Garcia may have physically spent time in the interior of the United States after his release, the law places him exactly where he started—at the border, subject to § 1225. *See Campbell v. Almodovar*, No. 1:25-CV-09509 (JLR), 2025 WL 3538351, at *6 (S.D.N.Y. Dec. 10, 2025). "[A]lthough aliens seeking admission into the United States may physically be allowed within its borders pending a determination of admissibility, such aliens are legally considered to be detained at the border and hence as never having effected entry into this country." *Moore v. Nielsen*, No. 4:18-cv-01722-LSC-HNJ, 2019 WL 2152582, at *3 (N.D. Ala. May 3, 2019); *see also Singh v. Noem*, No. CIV 25-1110 JB/KK, 2026 WL 146005, at *36 (D.N.M. Jan. 20, 2026).

Garcia—who has never been admitted and was found by an "examining immigration officer" to be "not clearly and beyond a doubt entitled to be admitted" 8 U.S.C. § 1225(b)(2)(A)—is properly in custody under §1225(b). Section 1225 says nothing "whatsoever about bond hearings." *Jennings*, 583 U.S. at 297. So Garcia's continued detention without a bond hearing cannot be in violation of the INA.

**B. Due Process**

Even if Garcia's detention without a bond hearing is authorized by the INA, he argues it violates the Fifth Amendment as interpreted by *Zadvydas v. Davis*, 533 U.S. 678 (2001). (Doc. 1 at 32-36.) Not so. As this Court has already explained in detail, such a claim is not available for aliens held under § 1225. *See Lezcano v. Ripa*, No. 2:26-cv-766-KCD-DNF, 2026 WL 1004523, at *2-5 (M.D. Fla. Apr. 14, 2026). The reasoning from *Lezcano* is equally applicable here. *Id.*

Garcia also seems to claim that the Government's decision to revoke his parole and return him to custody is a separate substantive due process violation. (Doc. 1 at 9.) But that argument rests on a faulty premise. There is no substantive right to remain free on parole. Release on parole is a matter of administrative grace that can be revoked at the agency's discretion; it is not a permanent constitutional entitlement. *See* 8 C.F.R. § 212.5(e)(2).

Because immigration detention is a civil tool rather than a criminal penalty, the constitutional line is generally drawn at punishment. *See Rodriguez-Fernandez v. Wilkinson*, 654 F.2d 1382, 1387 (10th Cir. 1981). By contrast, the Government can lawfully hold a noncitizen to ensure they are present for removal or to keep the public safe. That is simply the machinery of the immigration system doing its job. A substantive due process violation happens only when that machinery breaks down—when the detention loses

6

its reasonable connection to immigration proceedings and morphs into a penalty. *Cf. Lee v. Stone*, No. 2:11-CV-00014-RWS, 2011 WL 4553147, at *7 (N.D. Ga. Aug. 25, 2011). So long as the custody serves a legitimate immigration purpose rather than acting as a punitive measure, it stays on the right side of the Constitution. *See, e.g.*, *United States v. Salerno*, 481 U.S. 739, 747 (1987); *Rodriguez v. Perry*, 747 F. Supp. 3d 911, 917 (E.D. Va. 2024) ("[A]liens . . . have a substantive due process right to be free of arbitrary confinement pending deportation proceedings.").

Garcia cannot show that his current stint in custody is a punishment masquerading as immigration processing or is otherwise arbitrary. He is an "applicant for admission" under § 1225. The INA explicitly authorizes his detention. One can certainly understand Garcia's frustration with his current position, waiting in a detention cell for months while his immigration case inches forward. Yet this Court cannot use judicial fiat to conjure a due process claim just to ease the wait. We are not staring down the barrel of indefinite detention—the constitutional danger the Supreme Court found so problematic in *Zadvydas*. Garcia's current custody has a clear statutory endpoint: it lasts only "until removal proceedings have concluded." *Jennings*, 583 U.S. at 299. And if he eventually receives a final order of removal only to have his deportation stall, the doors of the courthouse will open for him to seek relief under *Zadvydas*. Because the existing framework comes with a

built-in expiration date, there is no reason to engineer a constitutional workaround.

### C. Review of Immigration Court's Decision

Garcia also contends that, during his immigration court proceedings, he filed a motion for "continuance" to permit "processing of his AOS [Adjustment of Status] application," which the IJ denied. (Doc. 1 at 7.) Garcia maintains the IJ's denial was error under *Bull v. I.N.S.*, 790 F.2d 869 (11th Cir. 1986), which he asserts found such a denial of a continuance to be an abuse of discretion. (Id. at 2.) Thus, his petition seeks to "vacate the order of the March 12, 2026, denying Petitioner's request for a continuance and ordering his removal and remand for further proceedings." (*Id.* at 10.)

Garcia has a removal order (dated March 12, 2026), *see* Doc. 9-7, which is presently on appeal to the Board of Immigration Appeals, *see* (Doc. 9-8). The problem for Garcia is that Congress built a highly specific, exclusive pipeline for challenging removal orders. And that pipeline completely bypasses the federal district courts. Under 8 U.S.C. § 1252(a)(5), the *only* path for judicial review of a removal order is a petition filed in the appropriate court of appeals. *See Nasrallah v. Barr*, 590 U.S. 573, 580 (2020) ("[F]inal orders of removal may not be reviewed in district courts, even via habeas corpus, and may be reviewed only in the courts of appeals."). Because

Garcia's claim is an unmistakable, direct challenge to his removal order, this Court lacks the authority to hear it.

### D. Warrant

Finally, Garcia mentions in passing that he was arrested without a judicial warrant, probable cause, or reasonable suspicion. (Doc. 1 at 3.) But such a claim is not cognizable under § 2241. A writ of habeas corpus is the remedy for someone seeking release from unlawful confinement. It challenges the fact or duration of detention. *See, e.g.*, *Hutcherson v. Riley*, 468 F.3d 750, 754 (11th Cir. 2006). It is not a catch-all bucket for complaints about police misconduct, past mistreatment, or the conditions of confinement. *See Houston v. Pearce*, No. 1:21-CV-0582-LMM-CMS, 2021 WL 11718540, at *1 (N.D. Ga. Feb. 18, 2021). In any event, this Court lacks jurisdiction to address Garcia's arguments about the Government's decision to arrest and hold him. *See Gupta v. McGahey*, 709 F.3d 1062, 1065 (11th Cir. 2013) (finding no jurisdiction to address detainee's claims that police "illegally procured an arrest warrant, that the agents illegally arrested him, and that the agents illegally detained him"); *see also Alvarez v. U.S. Immigr. & Customs Enf't*, 818 F.3d 1194, 1203 (11th Cir. 2016).

### IV. Conclusion

Garcia is legally situated at the border and subject to mandatory detention under 8 U.S.C. § 1225. Because that statute provides no right to a

bond hearing, and the Due Process Clause does not step in to supply one for an arriving alien, his continued custody is lawful. Accordingly, Garcia's Petition for a Writ of Habeas Corpus (Doc. 1) is **DENIED**. The Clerk is directed to terminate any pending motions and close the case.

**ORDERED** in Fort Myers, Florida on April 24, 2026.

Kyle C. Dudek
United States District Judge